UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANTWAN SLATER,

        Plaintiff,

v.                                              Case No. 08-CV-1037

KATHY LEMENS, RICHARD HEIDORN, MD,
JEANANNE GREENWOOD, MICHAEL MAENE,
WILLIAM POLLARD, HOLLY PUHL,
MICHELLE CUMMINS, WARDEN LARRY JENKINS,
MATTHEW J. FRANK, RICK RAEMISCH,
JANE DOE, and JOHN DOE,

        Defendants.

## ORDER

The plaintiff, a Wisconsin state prisoner, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The court granted the plaintiff's motion for leave to proceed *in forma pauperis* and dismissed the complaint for failure to state a claim. Judgment was entered dismissing this action on March 31, 2009. On April 6, 2009, the plaintiff filed a motion for reconsideration in which he contends that the court erred in dismissing his complaint. This motion will be addressed herein.

There is no motion for reconsideration under the Federal Rules of Civil Procedure. There are, however, Rules 59(e) and 60(b). A motion filed under Rule 59(e) must be filed within ten days of entry of the judgment,[1] while a Rule 60(b)

---

[1] On December 1, 2009, Rule 59(e) was amended to enlarge the time for a post-judgment motion to twenty-eight days.

motion must be filed "within a reasonable time - and for reasons (1), (2), and (3) no more than a year after the entry of the judgment[.]" Fed. R. Civ. P. 59(e), 60(c)(1). Whether a motion should be analyzed under Rule 59(e) or 60(b) depends on the *substance* of the motion, not on the timing or label affixed to it. *Obriecht v. Raemisch*, 517 F.3d 489, 493 (7th Cir. 2008) (citing *Borrero v. City of Chicago*, 456 F.3d 698, 701-02 (7th Cir. 2006)).

Altering or amending a judgment pursuant to Rule 59(e) is permissible when there is newly discovered evidence or where there has been a manifest error of law or fact. *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006) (citing *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000)). Vacating a judgment under Rule 60(b) is permissible for several reasons including mistake, excusable neglect, newly discovered evidence, and fraud. *See* Fed. R. Civ. P. 60(b). "Rule 60(b) relief is an extraordinary remedy and is granted only in exceptional circumstances." *Id.* (quoting *Karraker v. Rent-A-Center, Inc.*, 411 F.3d 831, 837 (7th Cir. 2005)). Rule 59(e), on the other hand, requires that the movant "clearly establish" one of the aforementioned grounds for relief. *Id.* (citing *Romo v. Gulf Stream Coach, Inc.*, 250 F.3d 1119, 1122 n.3 (7th Cir. 2001)).

The plaintiff bases his motion on errors of law, a basis encompassed by Rule 59(e). *See Obriecht*, 517 F.3d at 494. Accordingly, his motion will be considered under Rule 59(e). As indicated, a court may grant a motion to amend a judgment if there is newly discovered evidence or an intervening change in the law or if the

-2-

judgment reflects a manifest error of the law. *Cosgrove v. Bartolotta*, 150 F.3d 729, 732 (7th Cir. 1998). A "manifest error" is a "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (citation omitted). Rule 59(e) motions are generally not vehicles to introduce new evidence or advance arguments that could or should have been presented to the district court prior to judgment. *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996); *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987). Whether to grant a motion to amend judgment "is entrusted to the sound judgment of the district of the district court." *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996).

The plaintiff contends that the court erred in dismissing the complaint for failure to state a claim and that the complaint does state an Eighth Amendment deliberate indifference to a serious medical need claim. He disputes the court's characterization of his complaint allegations as requesting a different course of treatment than he received and instead asserts that he initially received no treatment for his nose and skin problems. The plaintiff further asserts that, although he eventually did receive treatment for those conditions, the delay in treatment caused him pain and suffering in violation of the Eighth Amendment.

Upon screening the complaint under 28 U.S.C. § 1915A, the court reviewed the complaint allegations in detail and determined that they failed to state an Eighth

-3-

Amendment deliberate indifference to a serious medical claim. The Screening Order states in relevant part:

> The plaintiff was incarcerated at Green Bay Correctional Institution (GBCI) and Redgranite Correctional Institution (RGCI) at all times relevant. The following defendants are employed at GBCI: Nurse Kathy Lemens; Dr. Richard Heidorn; Health Services Unit (HSU) Manager Jeananne Greenwood; Deputy Warden Michael Baene; Warden William Pollard; and Nurse Jane Doe. Defendants employed at RGCI are: HSU Manager Holly Puhl; Inmate Complaint Examiner Michelle Cummins; Warden Larry Jenkins; and Nurse John Doe. The plaintiff is also suing the former Secretary of the Wisconsin Department of Correction (DOC) Matthew Frank and current DOC Secretary Rick Raemisch.
>
> CLAIM 1
>
> The plaintiff alleges that on April 2, 2007, while incarcerated at GBCI, he put in a health services request for a problem he was having with his nose. On April 9, 2007, Nurse Lemens saw the plaintiff, however, she "blew him off, talking about, if I stayed out of prison, I won't have to worry about seeing Health Services Unit." (Compl. at 2.) The plaintiff told Nurse Lemens that he came to HSU to get his medical needs treated, not argue with her, and then she got upset and made him leave the HSU without assessing his nose condition. When the plaintiff got back to his housing unit, he wrote an inmate complaint against Nurse Lemens for making him leave the HSU without assessing his nose condition. He also informed the Inmate Complaint Examiner that he did not want to be seen by Nurse Lemens again. After waiting approximately three months for HSU to treat his nose condition, the plaintiff submitted another health services request. He was seen again by Nurse Lemens who assessed some of the plaintiff's unrelated medical needs but not his nose condition.
>
> The plaintiff alleges that Dr. Heidorn saw him at least six times between April 24, 2007, and August 28, 2007, for medical needs unrelated to his nose condition. Each time, he brought up his nose problem but Dr. Heidorn always said that he did not call the plaintiff over for that. On August 29, 2007, Dr. Heidorn finally assessed the plaintiff's nose condition and diagnosed him with an allergic reaction

and swollen nasal passages. Beginning on September 6, 2007, the plaintiff was given about four different kinds of nasal sprays and about three different kinds of allergy pills but his nasal passages are still swollen and his sense of smell is very weak to the point that he almost cannot smell anything. Leaving his nose condition unattended for about six months put the plaintiff at risk of a life-threatening infection of the eyes, brain, or death, or could have provoked asthma or bronchitis.

On March 12, 2008, the plaintiff was transferred to RGCI. He wrote the HSU about his condition but it took them months to see him. He is experiencing severe congestion, headaches, fever, chronic pain in the face, teeth, a thick yellowish-green nasal discharge, and breathing problems. He wrote to HSU at GBCI and RGCI requesting to see an allergist or otolaryngologist because his condition is not improving but his request was denied.

CLAIM 2

Claim 2 is nearly identical to Claim 1 except the medical condition is cuts, sores, and blisters on the back of the plaintiff's hands, wrists, and forearms. Specifically, the plaintiff alleges that he put in an HSU request on April 2, 2007 for those symptoms and on April 9, 2007, Nurse Lemens saw him in the HSU. Instead of assessing his symptoms, examining, and treating the plaintiff, Nurse Lemens made the plaintiff leave the HSU. The plaintiff filed an inmate complaint stating that he did not want to be seen by Nurse Lemens. He waited about three months for HSU to treat his condition and then submitted another health service request. He was then seen again by Nurse Lemens who was more focused on his co-payment than on treating him. Nurse Lemens treated the plaintiff for some unrelated medical needs but did not assess his injuries.

The plaintiff was seen by Dr. Heidorn about four times between April 24, 2007, and July 9, 2007, for unrelated medical needs. Each time, the plaintiff tried to show Dr. Heidorn the injuries on the back of his hands, wrists, and forearms, but the doctor told him that he was not called over for that reason. In July 2007, the plaintiff's injuries were finally examined and he was given Hydrocerin and Hydropher ointment to rub on the cuts, sores, and blisters on the back of his hands, wrists, and forearms. The plaintiff experienced "chronic pain, suffering, emotional stress, and has permanent scars, and very dark spots, on the

-5-

back of his hands and wrists." He complained to the HSU at GBCI about his injuries but HSU failed to give him any type of treatment in a reasonable time and never gave him anything to relieve the pain.

. . .

It is doubtful that the plaintiff's medical conditions constitute serious medical needs. Several medical professionals at two different institutions did not deem them serious enough to treat immediately. They were aware of the plaintiff's nose and skin problems but they treated other medical needs first. Dr. Heidorn did eventually address the plaintiff's medical concerns. With regard to his nose problem, it was determined that the plaintiff had allergies and he was prescribed several medications to treat the allergies. Concerning his arms and hands, the plaintiff was provided ointment. The plaintiff alleges that at his April 9, 2007 appointment with Nurse Lemens, she got frustrated with him and made him leave without treating his nose and skin conditions. However, the plaintiff was also seen by Dr. Heidorn in April 2007, so Nurse Lemens' actions did not leave the plaintiff without medical care. Indeed, Dr. Heidorn saw the plaintiff six times between April 24, 2007, and August 28, 2007.

It is apparent from the plaintiff's complaint that he would have preferred a different course of treatment from different providers. However, disagreement with medical professionals about treatment needs does not state a cognizable Eighth Amendment claim under the deliberate indifference standard of *Estelle v. Gamble*, 429 U.S. 97 (1976). *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

(Court's Screening Order of March 31, 2009, at 3-8.)

A deliberate indifference claim requires both an objectively serious risk of harm and a subjectively culpable state of mind. *Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). A deliberate indifference claim based on inadequate medical treatment requires, to satisfy the objective element, a medical condition "that has been diagnosed by a physician as mandating treatment or one

that is so obvious that even a lay person would perceive the need for a doctor's attention." *Edwards*, 478 F.3d at 830 (quoting *Greeno*, 414 F.3d at 653). The subjective component of a deliberate indifference claim requires that the prison official knew of "a substantial risk of harm to the inmate and disregarded the risk." *Greeno*, 414 F.3d at 653 (citing *Farmer*, 511 U.S. at 834). Mere medical malpractice or a disagreement with a doctor's medical judgment is not deliberate indifference. *Edwards*, 478 F.3d at 830-31 (citing *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Greeno*, 414 F.3d at 653; *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir.1996)). Yet, a plaintiff's receipt of *some* medical care does not automatically defeat a claim of deliberate indifference if a fact finder could infer the treatment was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate" a medical condition. *Id.* (citing *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)).

In *Edwards*, the Seventh Circuit Court of Appeals reversed the district court's decision to dismiss a complaint at screening where the complaint alleged that an inmate severely injured his finger in prison and failed to receive adequate, timely care because the doctor did not want to interrupt his holiday, and that such failure to treat resulted in permanent disfigurement, loss of range of motion, and infliction of unnecessary pain. 478 F.3d at 828-29. The court distinguished *Ciarpaglini*, finding that the prisoner had alleged more than a "disagreement with the course of treatment" claim.

-7-

> The state's reliance on *Ciarpaglini v. Saini*, 352 F.3d 328 (7th Cir. 2003), is misplaced. In *Ciarpaglini*, the plaintiff-prisoner contested his treatment for chronic mental illness and prison doctors' modifications to his medication regimen. We held that Ciarpaglini had pleaded himself out of court and thus failed to state a claim for deliberate indifference because his complaint evinced only disagreement with the course of treatment prescribed by the prison doctors. *Ciarpaglini*, 352 F.3d at 331. Ciarpaglini might have survived dismissal, we noted, if he had "simply allege[d] that his medication [was] being gratuitously withheld without a reason." *Id.* That is precisely what Edward has alleged here.
>
> In contrast to *Ciarpaglini*, Edwards *is* claiming his treatment was unnecessarily and deliberately withheld for no better reason than to accommodate his doctor's holiday plans. The physicians reviewing Edwards's grievance did not address the delayed treatment, instead focusing on the adequacy of the treatment he eventually received. The adequacy of Edwards's later treatment is a matter indistinct from Edwards's central claim of deliberate indifference, which challenges Ruiz's delayed treatment, the justification for that delay, and the resulting harm. Edwards has stated a claim for deliberate indifference, and his allegations do not preclude recovery on that count.

*Id.* at 832.

In this case, a second review of the complaint allegations demonstrates that while the plaintiff alleges that he did not receive any treatment for his nose and skin conditions, during that time period he was being cared for by medical professionals who treated him for other medical needs. The plaintiff advised these professionals about his nose and skin conditions and they, across two institutions, made the decision to not treat those needs at that time and instead treated other medical needs of the plaintiff first. This is a "disagreement with the course of treatment"

-8-

scenario, as described in *Ciapaglini*, not a "gratuitous failure to treat" scenario, as described in *Edwards*.

The plaintiff has not shown that the court's Screening Order contains a manifest error of law. Accordingly,

**IT IS ORDERED** that the plaintiff's motion for reconsideration (Docket #10) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 19th day of January, 2010.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge